UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WAYNE FREEMAN,
WAYNE'S WORLD, INC.,
d/b/a Heroe's Nightclub,
                      **Plaintiffs,**

-vs-                                                            Case No.  6:03-cv-1280-Orl-19JGG

**TOWN OF EATONVILLE, FLORIDA,**
**J. MURPHY,**
                      **Defendants.**
_____

## ORDER

This case comes before the Court on Plaintiffs' Motion for Rehearing, Motion to Set Aside Order and Judgment (Doc. No. 62, filed Mar. 9, 2005) and Defendants' Memorandum of Law in Response to Plaintiffs' Motion (Doc. No. 65, filed Apr. 4, 2005).  Plaintiffs request reconsideration of the Court's Order by which it granted summary judgment in favor of Defendants on Plaintiffs' § 1983 and state-based tort claims.  (Doc. No. 58, filed Feb. 22, 2005).

The parties have made the Court's task in this case particularly difficult through their failure to conduct discovery[1] and to clearly and thoroughly brief their respective positions at the summary judgment stage.  Defendants submitted in support of their motion for summary judgment the *only* deposition taken in this case, that of Wayne Freeman, and the sworn statements of three officers which, while permissible under Rule 56(e), were written at the time of the incident and therefore were not as thoughtfully or thoroughly drafted as affidavits which

---

[1] As previously noted by the Court, not one of the police officers involved in the closing of Heroe's Nightclub or the arrest of Wayne Freeman was deposed in this case.  Furthermore, neither party submitted testimony, by deposition, affidavit or declaration, of a single eyewitness to the events of September 3–4, 1999, except the deposition of Plaintiff Freeman and the written reports of three officers at the scene.

could have been prepared specifically addressing the issues developed in the instant litigation. (Doc. No. 33 & Ex. 2–4, 8–9, filed Oct. 15, 2004). In response, Plaintiffs' memorandum in opposition focused primarily on Defendants' alleged failure to submit affidavits pursuant to Rule 56(e) and dedicated little effort to directing the Court to record evidence which would create genuine issues of material fact, thus leaving the Court to pour through the record itself. (Doc. No. 39, filed Nov. 12, 2004). Having done so, and having requested supplemental briefs from the parties on the legal authority of the police to close down a business for several hours under certain circumstances, the Court determined the matter by granting Defendants' motion for summary judgment. (Doc. No. 58).

Plaintiffs have now come forward with their motion to set aside the judgment, admonishing the Court for allegedly misinterpreting the summary judgment standard and arguing facts for the first time without providing so much as a single citation to the record in support, again forcing the Court to conduct its own exhaustive review of the record. (Doc. No. 62). Defendants have responded with a memorandum arguing only Plaintiffs' purported failure to satisfy the standard for granting reconsideration and failing to discuss even remotely the factual disputes asserted by Plaintiffs' motion. (Doc. No. 65). Nevertheless, the Court will endeavor to address those evidentiary and factual issues raised by Plaintiffs which it feels are appropriate for reconsideration.

### Standard for Reconsideration

The decision to grant reconsideration is committed to the sound discretion of the district court and will not be overturned on appeal absent an abuse of discretion. *Region 8 Forest Serv. Timber Purchases Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). The purpose of a

motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). There are three grounds for reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* A motion for reconsideration should not be used to reiterate arguments previously made. *Id.*

### Plaintiffs' Arguments

Insofar as Plaintiffs contend that the Court misinterpreted the summary judgment standard set forth by the Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), such contention is no more than a reiteration of the argument advanced in Plaintiffs' Response to Defendants' Motion for Summary Judgment (Doc. No. 39) which was rejected by the Court.[2] Accordingly, reconsideration of this issue is inappropriate.

Plaintiffs object to the Court's consideration of the officers' sworn statements (Doc. No. 33, Ex. 2, pp. 3–4; Ex. 3, 4) because "they do not recite that the particular affiant was with personal knowledge of the facts stated therein." (Doc. No. 62, p. 5). Plaintiffs further object to any hearsay contained in those statements. (*Id.*). At the hearing for oral argument in this case on February 22, 2005, however, Plaintiffs' counsel was given the opportunity by the Court to object

---

[2] The Court will add, however, that Plaintiffs' counsel would be well-served to review Rule 56, which provides:
>  A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move *with or without supporting affidavits* for a summary judgment in the party's favor as to all or any part thereof.

Fed. R. Civ. P. 56(b) (emphasis added).

to those documents as affidavits yet did not do so, and the Court will not entertain Plaintiffs' objections to the statements at this time. (Doc. No. 57, filed Feb. 22, 2005).

     Plaintiffs also object to the Court's reliance on Officer Murphy's Offense Incident Report (Doc. No. 33, Ex. 2, pp. 1–2) because it is unsworn. (Doc. No. 62, p. 5). Although the Court referred to "Murphy's report" in its Order (Doc. No. 58, p. 5), the factual assertions attributed to that report—that there were disturbances including gunfire in the area, that Murphy's Patrol Sergeant [Mitchell] ordered him to close the doors, and that Murphy informed Heroe's security guards of this order—were in fact gleaned from Murphy's sworn Charging Affidavit, to which Plaintiffs failed to make a timely objection. (Doc. No. 33, Ex. 2, pp. 3–4). The only other fact for which the Incident Report was cited by the Court relates to the additional law enforcement agencies summoned to Heroe's Nightclub for assistance. (Doc. No. 58, pp. 4–5). Freeman's own deposition testimony supports Defendants' assertion that, in addition to the Eatonville Police Department, the Winter Park and Maitland Police Departments were present at the time, and Freeman acknowledges at the very least the possibility that a Sheriff's Department was on the scene as well, though it is unclear from the transcript whether such reference is to the Orange County or the Seminole County Sheriff's agency. (Doc. No. 33, Ex. 8, Freeman Depo. I, pp. 61–62). Whether there were two or possibly three additional law enforcement agencies called to the scene to assist the Eatonville Police Department, as supported by Freeman's testimony, or up to five agencies, as put forth in Murphy's report and initially relied upon by the Court, is immaterial. The fact that multiple law enforcement agencies were summoned to Heroe's Nightclub at the time of the incident remains undisputed in the record before the Court.

Plaintiffs argue that the Court's acknowledgment in footnote 5 that Freeman disputes portions of the sworn statements of Officers Murphy, Owens and Grayson indicates that there exist sufficient disputed issues of material fact to preclude summary judgment. (Doc. No. 62, p. 4). As stated in the footnote, "unless specifically noted, the Court's recitation of the facts are taken from Freeman's own deposition testimony." (Doc. No. 58, p. 4, n.5). The points of fact for which the Court relied on the officers' accounts of the evening rather than Freeman's are those about which Freeman was not competent to testify. First, Freeman disputed that Murphy spoke to the club's security guards because they did not notify Freeman of such conversation(s) and because Freeman was available himself to be consulted, which he contends obviated Murphy's need to speak to anyone else. (Doc. No. 58, p. 5, n.7; Doc. No. 33, Ex. 9, Freeman Depo. II, pp. 11–12, 14, 17). However, Freeman's testimony that Murphy did not speak to the club security guards is speculative and is not based on personal knowledge.

Similarly, Freeman disputed the officers' assertions that there had been physical disturbances and gunfire in the area. (Doc. No. 33, Ex. 9, Freeman Depo. II, p. 10). Because it is the nature of the assembled crowd and of the alleged disturbances at or around Heroe's Nightclub upon which the Court relied in holding that Defendants' decision to close the establishment was lawful, the Court will once again examine the evidence relative to that action.

Freeman testified that in the early morning hours of September 4, 1999, he had on staff fifteen private security personnel and five uniformed, off-duty police officers in order to handle the unusually large Labor Day weekend crowd. (Doc. No. 33, Ex. 8, Freeman Depo. I, pp. 52–53). He further testified that the crowd waiting to gain admission to the club on that Labor Day weekend was wrapped around the block. (*Id.* at 68). The parties agreed at the hearing in

this case that the block on which Heroe's Nightclub is situated backs up to a residential area. (Doc. No. 57). Freeman characterized the assembly as a "rowdy crowd" similar to a large number of people entering a stadium for a football game. (Doc. No. 33, Ex. 9, Freeman Depo. II, pp. 27–28). When questioned about Officer Grayson's sworn statement which included the remark that two men had been arrested for fighting on the ground, Freeman stated, "I didn't see that, so I can't—I was outside so I didn't see no fighting." (*Id.* at 33). Thus, at least one fight occurred resulting in arrests, a factual assertion that is not disputed by Freeman on the record before the Court. With regard to the remarks contained in the sworn statements of all three officers that gunfire was heard in the area, Freeman testified that "there was no gunshot fired, because if there was some gunshot fired, it would have been a ruckus out there. I mean, so there wasn't that—that was not going on." (*Id.* at 42). In other words, Freeman testified that because he did not observe a "ruckus," therefore no gunshots were fired. This is a non-sequitur. The record is devoid of evidence as to what Freeman could or could not observe from his station at the door of the club taking money from a rowdy crowd which, by his own admission, was wrapped around the block. Freeman's testimony about no gunshots being fired is speculation, and the Court determined that Freeman "is competent to testify only that he heard no gunfire himself." (Doc. No. 58, p. 15 n.13). Even if it is assumed that there had been no gunfire in fact, the belief of Officers Murphy, Owens and Grayson that shots had been fired, as reported in each of their sworn statements (Doc. No. 22, Ex. 2, p. 3; Ex. 3, 4), supports the action of Officer Murphy and the Eatonville Police Department in closing the club under the circumstances for the health, safety and welfare of the public.

Plaintiffs also contend that Defendants' position, as characterized by the Court, is that Officer Murphy was not ordered to close Heroe's Nightclub by Sergeant Mitchell, his supervisor who was on the scene, and that such fact supports a finding that closing the business was not necessary or legally justified. (Doc. No. 62, p. 4). Plaintiffs have misinterpreted footnote 8 of the Order, which the Court will now attempt to clarify. The Court noted Defendants' intent to argue at trial that Sergeant Mitchell ordered Officer Murphy to close the doors to the club *temporarily* in order to disperse the crowd assembled outside, that Murphy was carrying out that order when he encountered resistance from Plaintiff Freeman, and that he was not trying to close the club for the remainder of the morning. (Doc. No. 58, p. 6 n.8). The Court further noted that, for purposes of summary judgment, it must construe the facts in the light most favorable to Plaintiffs, and therefore the Court inferred from Freeman's deposition testimony that Mitchell's order and Murphy's intent were to shut down the club's operations *for the remainder of the morning*. (*Id.*). Murphy documented the fact that he had been "ordered by [his] Patrol Sgt. to close the doors to Heroe's and dispurse [sic] the crowd standing in front of it." (Doc. No. 33, Ex. 2, Charging Aff.). Moreover, Freeman testified that Mitchell was present at the time of the incident and further stated, "[Murphy] may have been ordered, I'm not really disputing about Sergeant Mitchell, because I wouldn't know that...." (Doc. No. 33, Ex. 9, Freeman Depo. II, pp. 11, 28; Ex. 8, Freeman Depo. I, p. 62). The Court did not intend to suggest, nor is there evidence in the record to support the suggestion, that Murphy acted alone and on his own initiative in closing the doors to the business. On the contrary, the undisputed evidence demonstrates that Sergeant Mitchell was at the scene and that he ordered Murphy to close Heroe's in light of the

events he observed there.  Therefore, Plaintiffs' reliance on the Court's statement in footnote 8 is misplaced.

Finally, Plaintiffs object to the Court's discounting of a statement made by Officer Hill to Freeman after his arrest.  In footnote 9, the Court questioned whether Hill's remark to Freeman after Freeman had been arrested and placed in the patrol car for two hours that "Murphy know[s] he's wrong" was admissible evidence.  (Doc. No. 58, p. 7, n.9).  Plaintiffs counter that the statement is an admission by a party opponent under Federal Rule of Evidence 801(d)(2)(D) and must be considered, though Plaintiffs do not specify the purpose for which the evidence is proffered.  (Doc. No. 62, p. 5).  As an initial matter, the content of the statement as related by Freeman is speculative; Hill has not been shown to have personal knowledge regarding Murphy's state of mind at the time of the incident and therefore cannot attest to what Murphy knew or did not know.  In addition, even drawing all inferences in favor of Plaintiffs and interpreting Hill's comment as a statement of his own opinion that Murphy's actions were wrong, such evidence is inadmissible against Murphy in his individual capacity because Hill has not been shown to have been acting as *Murphy's* agent, servant, or employee at the time he made the statement.

Though Hill's statement might be an admission pursuant to Rule 801(d)(2)(D) as to the Town of Eatonville, assuming *arguendo* the admissibility of the content, Freeman speculated himself that Hill might have made the comment for the purpose of consoling him after his arrest.  (Doc. No. 33, Ex. 8, Freeman Depo. I, p. 87).  Furthermore, the statement is ambiguous in that it is unclear to what Hill was referring.  It could be a reference to Freeman's arrest, the closure of the club, or simply to Freeman's detention in the squad car for two hours, or something else.

Finally, drawing all inferences in favor of Plaintiffs, the statement is not probative of any issue of fact other than the possible assertion that reasonable officers could disagree as to whether Murphy had probable cause to close Heroe's and subsequently to arrest Freeman.

### Conclusion

As the Court noted in its previous Order, if "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of [Murphy's] conduct under the circumstances, summary judgment for [Murphy] is appropriate." *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1378 (11th Cir. 1997). In addition, the standard by which an officer's assertion of qualified immunity is judged is not whether actual probable cause existed at the time of the arrest or the closure but whether the officer had *arguable* probable cause to take the action in question. *See Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). The Eleventh Circuit has stated that arguable probable cause is satisfied when "the facts and circumstances [are] such that the officer reasonably could have believed that probable cause existed." *Id.* Moreover, under Florida law concerning false arrest, "probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged." *Mailly v. Jenne*, 867 So.2d 1250, 1251 (Fla. 4th DCA 2004).

In the instant case, police officers outside Heroe's Nightclub faced a "rowdy crowd" in which at least one fight broke out leading to arrests and which resulted in the two or three additional law enforcement agencies being summoned to the scene. Officers Murphy, Owens and Grayson reported that gunshots were heard in the area which borders on a residential neighborhood. Freeman did not hear gunshots and does not believe they occurred because he did

not see a "ruckus." The facts and circumstances before Sergeant Mitchell and Officer Murphy were such that they reasonably could have believed that probable cause existed to close the club for the remainder of the morning in the interest of public safety. It follows then that Officer Murphy reasonably could have believed that he was engaged in a lawful activity and that probable cause existed to arrest Wayne Freeman as he resisted Murphy's efforts to close the doors to the club. Accordingly, the Court stands by its ruling in which it granted summary judgment for Defendants.

Based on the foregoing, Plaintiffs' Motion for Rehearing, Motion to Set Aside Order and Judgment (Doc. No. 62) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this __19th__ day of April, 2005.

/s/ Patricia C. Fawsett

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record